This morning is 071533 Lawler MFG Co v. Bradley Corp. Mr. Turner. Good morning. May it please the court. This appeal comes down to whether one phrase in the party's contract is to be given meaning or not. The phrase is, quote, such as an emergency shower or eye wash, unquote. Lawler and Bradley used this term in Section 3.1 of their license agreement in 2001. Mr. Turner, let me ask you one question. And you're focusing on 3.1 and 1.5 in the agreement. But often when we have a question before us of contract interpretation, which is what this is, one or both of the parties are pointing to documents outside of the contract that says that they argue indicate the intent of the contracting parties. It seems that nobody here does that. It seems that everybody focuses just on the contract provision. Is that correct? Is there anything beyond the four corners of the contract we should take into account? Well, not as to the interpretation of the meaning of the phrases, Your Honor. You're correct that the parties contended that it's apparent on the face of the document. Indiana law uses the four corners of the document. The evidence in the record does matter in the sense that it has to do with how that language is applied in the industry and what these products, how they're sold, and what is or is not similar to a shower or an eye wash. But yes. Okay. So we're basically confined to just the language of the contract. Yes, Your Honor. Okay. That's correct. And this has to do with these thermostatic mixing valves, which is Lawler's business. It invented them. It's a small company in Indiana. No one else has this technology. Briefly, in the 1990s, Bradley was not selling these valves. It was selling showers and eye washes. Those were its products, among others, not thermostatic mixing valves. And then it hired Lawler's Kevin Klein, began making them, and selling them in the marketplace. Lawler sued Bradley, got the plenary injunction, consent decree is entered, finding actual infringement, and the license agreement is entered. Under the license agreement. The problem is the license agreement isn't clear. Well, it is. There is some. Certainly, there's dispute about the meaning of it as to the term we're talking about and as to the interrelationship. It's a definition of lack of clarity, isn't it? Yes, sir. That's why we ended up with Bradley and taking the position that it could use the average royalty price as to cabinets and piping in the same fashion that it would as to showers and eye washes. Bradley's obligation under the license agreement is to pay royalties to Lawler as the parties contemplated. Over time, Lawler gave Bradley a number of notices of default under the agreement. The one that matters here is the one that has to do with the payment of royalties on sales of valves with the cabinet and piping accessories and the failure to pay those royalties and the failure to pay the associated audit fees. So we don't have to worry about all this squabbling about the accountant and whether the accountant was certified and confidentiality with respect to the account. We don't have to worry about that for purposes of this appeal. That's right, Judge. It has to do with the material breach that arises from the failure to pay royalties and the materiality of that. The rest of it, we would submit, is not irrelevant. It has to do with the way the parties conducted themselves, and Judge McKinney's findings, I would stand on as to the other issues, but it is not an issue we've brought to you for this appeal. Let me ask you if we have, you agreed here a minute ago that there was a dispute here. Why shouldn't we defer to the court that sits in the state whose law it is that we're trying to apply here when it's not off the wall? It seemed like a reasonable interpretation. And that seems to be a tenet of law, that you look to the courts that are most familiar with the local law. Why shouldn't we do that since we're three steps removed? Well, this is the only place I can go when that district court does not follow the Indiana law, and that's what happened here. Judge McKinney didn't follow the Musil case, which indicates that such as is a limiting term. And the phrase that we're talking about shows that, Section 3.1 says, if a licensed unit is sold in combination with other products, such as an emergency shower or eye wash, unquote, then we go to the average price royalty payment. And that's a limiting term. The order below does not deal with Indiana law. It doesn't deal with the dictionary definition. It doesn't deal with the judum generis, the principle of contract construction. And neither does Bradley. There is no rationale in the district court's opinion for saying that we can just treat that as an example of products. You said that your document says Indiana law applies. It does indeed. Presumably is applying it. Well, that was the task of the district court, respectfully. It didn't follow through on that task because it didn't apply what Indiana law says such as means, such as is a limiting term. There's a reason. The rest of Indiana law on that point, which the judge didn't apply, is that a contract must be read so as not to render any term meaningless or surplusage, which is what this phrase would be if we don't show it as a limiting term because it effectively reads out of the agreement such as emergency shower eye wash. These are the two fundamental big products that Bradley was making at the time the negotiations occurred. If it doesn't get the benefit of the average price, what is the royalty? What is the default? Is it the previous sentence, 10%? Yes, 10% of the invoice price of what is sold. And so it would be, and the evidence in this case is that Bradley sells, the whole transaction is valve plus whatever accessories go with it are invoiced. That's the default, yes. And the word product is already in that phrase. It doesn't need examples. We know anything can be a product if we read the such as out of the term. The Oxford English Dictionary, the blacks definition that we supplied to the court, clearly is of the kind or character specified. It is alike, similar, or the like kind. It is having the particular quality specified. None of that is recognized by the district court's opinion. None of it is recognized by Bradley. The Indiana Supreme Court in the Musil case said it's a limiting term, such as the principle of adjunct generis. We have a general phrase followed by specific items. It says that we would restrict the application to the types of things that are enumerated. None of these principles was followed in the district court's opinion, and so there's no basis to defer to that. And Bradley then in his brief says, well, you know, pipes and cabinets are kind of like, it falls back to saying, okay, pipes and cabinets are kind of like showers and eyewashes. Well, they're not. The only evidence in the record on this point is the evidence put in by Lawler that we put in at trial. Do you think such as is equivalent to, for example? I don't. I think it can be. It is, for example, plus it's the limitation, Your Honor, because otherwise it has no function. I mean, I don't think we need to say, well, a product, for example, the box it comes in. A product, for example, you know, another thing that Bradley chooses. Do you think they're reach limiting? Yes, sir, I do. Bradley put in no evidence to support its notion that cabinets and pipe accessories are similar in any way to the showers and eyewashes. The cabinet, what does the evidence show? The cabinet's a plain box, just a box. It has cutouts, so it's peculiarly suited to the valve that's being sold. The piping, the piping are just little connections that get the water from the valve to the edge of the box. That's all. They could fit in a little plastic baggie. We had them in front of the district judge that way. They're minor accessories, but they're also suited to the particular valve that's sold. The value is in the valve. That's the testimony. That's the evidence. That's why the customer buys, makes the transaction. It wants the valve, and it gets the accessories with it. Those facts are undisputed in the record. In contrast, the showers and the eyewashes, which are independent products themselves, in fact, in Bradley's literature, in the record, in the appendix, it shows that the eyewash is a separate product. It shows the shower is a separate product. It does not show a cabinet accessory, a piping accessory, as a separate product that's sold. There's no market for that. The customer gets it just because the engineer specs it to go with the valve that they want. The such-as term is a limiting one under Indiana law. Let me ask you, what would the result be in this case if one were to agree with you with respect to this contract provision, so that we felt the district court erred on that? Would it be sent back to the district court? What would have to happen? The result, Your Honor, I believe should be that it would be remanded to the district court with instructions that the construction that Lawler's presented is the correct one, that there has been a breach, and that the material breach means that Lawler did, in fact, have a basis to terminate, to send his termination notice. Would there have to be fact-finding as to whether the items of concern are such-as? If we find for you and hold that such-as is a limiting term, isn't there a fact that has to be found that isn't for us to find? I'd submit to you, Your Honor, that the record includes evidence that is uncontested, that shows that the pipes and cabinets are not such-as as the showers and eyewashes. If it was this court's determination that that's not sufficiently clear from the record, it could go back to the district court for that determination based on the record that's been established, I think, because Bradley had it shot to put it in its evidence on that point. But the judge didn't make, to pick up, I think, on what Judge Lurie is saying, Mr. Turner, the judge didn't make a finding about that. You're correct. There is evidence in the record, but you're correct if I'm wrong, but that there hasn't been a finding with respect to that evidence. No, you're right, Judge Schell. He did not make that finding. And so Lawler would submit that it's clear as to what that finding needs to be, but you're absolutely correct. He did not make it. He didn't get that far in the analysis because he stopped it at the earlier stage. Would you like to stay the rest of your rebuttal time? Yes, I would. Thank you. Mr. Grossman. I apologize, Judge. I'm a little slow. I had some hip surgery a few weeks away from a full recovery, but I'm a little slow in walking to the podium. I'll try and be brief. First, in Judge Schell's question about what's the issue in this case, it's just the royalty issue. The patent marking and the audit and accounting fees and the confidentiality are not in appeal. Those issues were not raised in appeal. So it's just the audit. I'm sorry, it's just the royalty issue. Mr. Grossman, is there, in the end, a case law interpreting such as as a limiting term? We cited a case law in our red brief, Your Honor. It's starting with Supreme Court precedent, Seventh Circuit precedent, Indiana precedent, and we included some examples from this court where I think they used the phrase such as as meaning for example. That doesn't settle the question because for example can be limiting too. It can. It can be. It has other meanings, but we're not looking for an abstract meaning in the context of just what a dictionary says. I think Waller cites some dictionaries that say it could be limiting. In other words, there's no precedent. It's a question of reading the contract in total in light of the circumstances? No, I think what you want to do is you want to read the contract in light of the circumstances. In fact, what the district court did here, and I think it goes to a question that Judge Schell raised as well as yourself, Your Honor, is the district court judge didn't consider extrinsic evidence. In fact, it was specifically excluded. At page 24 of the district court's opinion, he cited that Waller's attempt to use extrinsic evidence was improper and wouldn't be admissible because under Indiana law, the district court agreed with the parties. Both parties stipulated that the contract was not ambiguous. On page A23 in the appendix, the 23 of the district court's opinion, the judge said, I agree with the parties. The contract is not ambiguous. Under Indiana law, with an unambiguous contract, we look to the four corners of the agreement. The district court judge cited that. But the stipulation that it was not ambiguous didn't mean agreement or what it meant. Correct. It was not ambiguous, each of you felt, based on your own interpretation. That's correct. But the judge made a specific finding on page 23 of the decision that it was not ambiguous. He said the court so finds that the contract is not ambiguous. Having made that finding, that then bound the district court judge to the application of Indiana law, which was quite clear. That with an unambiguous contract, you look at the four corners, and the district court judge did just that. He rejected all of the extrinsic evidence on which Waller relied and looked at the four corners. He said, page 23 of the opinion, that there's nothing in the agreement that would support Waller's interpretation. They take the interpretation. In fact, they took various interpretations for the district court. First, they started with their grammatical argument that there was no comma, and that was what made the phrase such as one of limitation. Then they said that the products had to be of the same kind and character. That was at appendix page 204 at the hearing. They then said that the products had to be freestanding, again at page 204 at the hearing. Also, in the appendix at page 329, they emphasized that it's a freestanding product. But if the word such as appears here a couple of times in connection with emergency showers and eyewashes, doesn't that indicate that it's limiting with respect to emergency showers and eyewashes and those that are sui generis? Because those words are the only words that appear here. They are, but I think that- Doesn't that tell us what such as means? I think the word such as can be, for example, as cited in the cases in the red brief where it was used specifically, it was stated in those cases that such as was not a phrase of limitation. It was a phrase of example. The dictionary definitions support that. If you go online, do a simple Google search for the phrase such as in yourdictionary.com, it says such as is for example, for instance. The draft of the agreement. I'm sorry, Your Honor. The draft of the agreement. The agreement was an agreement that was drafted by Bradley and Lawler, both represented by counsel, in conjunction with the magistrate judge in the court in Indiana. In any event, there's no argument for us that it's interpreted against the drafting. That's correct. And agreed in the settlement agreement. The settlement agreement is very specific, which is included in the appendix A51, but section 16 of the settlement agreement, which is at appendix page A53, section 20 and 21 of the settlement agreement, which is at appendix page A54, are very specific that say all the prior discussions, negotiations between the parties are wrapped into the settlement agreement, that there's nothing outside of the license agreement which will control. So now in trying to proffer a definition that the phrase such as is limiting, they started out with the no comma, the kind and character, the freestanding, and then said also that it had to be sold without reference to a valve or the value of the valve. In the motion for reconsideration that they filed in the district. Those are all arguments. Wouldn't they be relating to the nature of the product? They seem to be talking about the nature of the product. In other words, those seem to go to whether a particular product would be similar to an emergency shower or an eyewash. They don't really seem to be arguments directed at what such as means in the setting of the contract. In the setting of the contract, the license agreement was entered into as a result of a settlement of patent and trade secret litigation. The patents involved are patents that go just to a valve. I think when you look at the four corners of the license agreement, the intent of the parties was tried to limit the payment of royalties to what was invented and what was patented, which was a valve, and that is why the section 3.1 and in combination section was put in there. But the suggestion that it has to be freestanding or of like kind in character, as the district court said, invites the court to rewrite the agreement, which it didn't want to do. But there's no reason why it has to be freestanding, why they picked that characteristic. Those are really points that you would only get into if we were to agree with Mr. Hunter's argument. In other words, if the case went back, then the issue would be, okay, is a particular item similar to or like an emergency shower or an eyewash? Then you'd be getting into that, right? I think the district court could recognize, without getting into the specific fact finding of extrinsic evidence outside the four corners, that the district court could recognize all of the products. We're only talking about cabinets and piping. These are large plumbing valves that are sold for industrial applications that make sure that the water that's delivered would not scald the user, as hotels or factories or other things. They're called thermostatic mixing valves because there's a thermostat in there that sets the temperature to make sure that the temperature is not too hot or too cold. But they're all plumbing products. They're all products sold by Bradley. There's no reason why I think the court could look at these. These are all plumbing products. They're products sold by Bradley. They're all products that use a thermostatic mixing valve. And in the language of the agreement in Section 3.1, these products are all shipped or invoiced. Excuse me. When it talks about cabinets, what are we talking about really? I had a little bit of a hard time getting my hand on it. I think of a cabinet as something that there's a sink and there's a space under it for a paper towel or toilet paper or whatever. But what do we mean when we're talking about a cabinet? You're almost right, Judge. It's almost like a medicine chest cabinet that you have hanging over the sink. It's really just a stainless steel box. And these thermostatic mixing valves, in fact some of the building codes in some of the states, require that the valves be put in a box and typically there's a lock on the box because they don't want people messing around with the temperature adjustment. So it's a cabinet simply to contain the valve. It's an unpatented element. It's simply a square box made out of stainless steel that's sized to be the appropriate size to house whatever valve it's supposed to have. So it's different from a cabinet that you have under a sink where you can put towels or... Correct. It's just a stainless steel box. It will have an opening, of course, so that you can bring in the plumbing connection so it can connect up to the plumbing system of the building in which it's being installed. But it's simply a box. And the piping that's at issue is just simply standard piping that connects the valve up to a plumbing system in a building. Some contractors, when they order these valves, like to have a turnkey operation. They like it to be delivered with the piping in a box so that when it gets to the job site, the plumbers can just hook it right up to the plumbing system. Other contractors like to just buy the valve and they do the assembly themselves. So we're talking about a very small number of valves that are shipped. The total amount of royalties that were withheld over a four-year period were alleged to be $40,000 out of about a million dollars of royalties that have been paid. You asked, I think, what happens if you disagree with Bradley's position, that you think that the contract would be ambiguous and that maybe does it go back and you reverse does it go back to the district court for fact findings. I think the district court would have to consider the basis of the court's reversal, of course, and see if there was additional evidence. But that wouldn't end the case because the court decided there was no breach, that Bradley had paid the royalties that it was obligated to pay. But there were two other reasons why we thought that there would be no breach. One was we didn't get proper notice on the royalty issue. We only got notice on patent marking. And the royalty issue was raised for the first time in the briefing materials at the district court based on the breach. The other issue was material breach. Under Indiana law, a breach has to be a material breach in order to justify terminating the agreement. We argued that the small amount of royalties which we thought we paid properly didn't justify a material breach. So there's been no finding of material breach. That's correct. So even if we were to agree with Mr. Turner, it would have to go back for determination to whether there had been, if there was a breach, it was material. Correct. The judge never reached material breach because he said there's been no breach. Bradley paid the amount of royalties which the court determined that it was appropriate for the court to pay. When you look at the various arguments that I think Lawler has made as to how this phrase, such as, would be interpreted as a phrase of limitation, not only did they raise all the various things that they did in the district court, in their motion for consideration they defined it even more specifically. In the motion for reconsideration, which is in the selected pages or in the appendix at 459 and 460, they said that to be a such as product it had to satisfy three specific criteria. It had to exist at the time of the agreement. It had to be a separate freestanding product. It had to not be dependent on the sale of the valve or it couldn't also use the Lawler valve technology. And I think the district court in the motion for reconsideration, which was denied, probably said that's a lot to read into the phrase such as. That would require that the district court rewrite the agreement. And the district court said I don't need to do that. It was clear to the district court that such as, while one meaning is for example, and it's acknowledged there are other dictionary definitions that say that the phrase such as can be of the kind specified. That was in the Webster's unabridged dictionary of the English language. But it also, in that same dictionary, while it said such as could be of the kind specified, said that an alternative definition of such as is for example. So the judge read such as within the context of the whole agreement, understanding the intent of the parties as trying to limit the payment of royalties to what was patented in the settlement of this litigation. And that's what section 3.1 was intended to do. To limit the payment of royalties to what was patented. And when the patented invention was invoiced or shipped in combination with other products, we tried to be clear the objective of the such as phrase was to avoid having to be here to explain it. It was just to give some examples. And I think a contract can provide examples without those examples also serving as limits. It doesn't read out the exemplar. It merely provides additional context by using the exemplar. And I think that's how the district court interpreted this agreement. No further questions? Thank you. Mr. Turner. Thank you, Judge. This is point one. For the first time I heard reference to some dictionary definitions. They're not in the briefs presented by Bradley at all. I heard about dictionary.com. What we've presented to you is the Oxford English Dictionary and Blacks, which lawyers use. This was drafted by lawyers. As to the Indiana law that applies, the Musil case is never addressed by Bradley, not addressed here today. That's the Indiana Supreme Court, the highest authority we have in Indiana, to say this is what such as means. It doesn't depend on context? It does depend on context, Your Honor. But there is no function suggested by Bradley for this language if it is not a limitation of some kind. If it's just an example, it's meaningless. It has no function at all, and none was suggested to you today. It would have no purpose if it is not given a limiting function in section 3.1. Just a bit of a side note on Judge Shull's question about the cabinet. At appendix pages 438 and 439, there's a diagram from Bradley as to how the cabinet and the piping accessories look with the valve. It is just a plain box. It is unique to the valve because the valve fits in it. It has cutouts. There are different shape sizes as to how the engineer specs it. The pipe accessories are also unique to that valve. On the point of materiality, one aspect is this agreement does not set, for example, a standard of materiality. It doesn't require a material breach. It has a default curing provision, which Lawlor gave notice, you're in default for not paying the audited amounts for cabinets and pipes. Bradley basically thumbed their nose and said, we disagree with you. We're not paying. The contract provision says Lawlor can give a notice of termination, which it did, and terminated the agreement. There is no requirement of materiality under Indiana law when that's the circumstance. If there were, materiality would be supplied here. Mr. Grossman misspoke a bit when he said for all these years it was $40,000. The audited years, 2001, which is just a bit of a year, it's really two through four, is $42,000. The evidence in the record is that sales increased for Bradley of these amounts, that's at Appendix 266-67, dramatically so that it's at least a multiple of the $40,000 plus the $120,000 in audit fees were well over $200,000 plus interest at 18% for several years were well over $300,000. I don't think there's going to be any question that there's materiality here in terms of the nature of the breach that has occurred. If you have any more questions, thank you for your time. Thank you very much. The case is submitted.